UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

)
THE STANDARD FIRE INSURANCE                )
COMPANY,                                    )
                                           )
    Plaintiff,                            )
                                           )
       v.                                )    C.A. No. 04-351S
                                           )
DONALD GORDON AND NICOLE LEA                )
GORDON,                                     )
                                           )
    Defendants.                           )
                                           )

## DECISION AND ORDER

WILLIAM E. SMITH, United States District Judge.

    This case arises out of an unfortunate accident which occurred at a home owned by Donald Gordon. The accident resulted in personal injury to Donald's daughter, Nicole Lea Gordon. Following the accident, Nicole brought a negligence suit against her father in state court. Donald's insurer, Standard Fire Insurance Company, responded by bringing a declaratory judgment action in this Court against Donald and Nicole, pursuant to the federal Declaratory Judgment Act, 28 U.S.C. § 2201,[1] seeking a determination of its

---

[1] 28 U.S.C. § 2201(a) (1988 ed., Supp. V) provides, in relevant part, that:

    In a case of actual controversy within its jurisdiction
. . . any court of the United States, upon the filing of
an appropriate pleading, may declare the rights and other
legal relations of any interested party seeking such

rights and obligations under its insurance contract with Donald. Nicole filed a Motion to Dismiss. The issue for this Court to decide is whether a declaratory judgment action regarding liability insurance coverage should be dismissed in light of the pendancy of a related state court tort suit. For the reasons set forth below, the Motion to Dismiss is DENIED.

I. Background

On April 11, 2002, Donald Gordon purchased a house located at 52 Lake Street in Wakefield, Rhode Island. The home was insured by Standard Fire Insurance Company ("Standard" or "Plaintiff") pursuant to a Homeowner's Policy ("the Policy") issued to Donald, with a policy period of April 11, 2002, to April 11, 2003. Some time in June or July 2002, Nicole Gordon and her boyfriend moved into the home. On July 25, 2002, Nicole fell down a set of stairs on the premises and was injured.

Two years passed, and on April 21, 2004, Nicole sued her father, Donald, for negligence in Rhode Island Superior Court. Approximately three months later, on August 17, 2004, Standard brought this action against Nicole and Donald, seeking, among other things, a declaration that it has no duty to defend or indemnify

_____

declaration, whether or not further relief is or could be sought.

2

Donald.   On October 20, 2004, Nicole and Donald filed their Answer,[2] and shortly thereafter, on October 25, 2004, Nicole filed a Motion to Dismiss.  Standard filed its Opposition on November 15, 2004, and, after receiving a brief extension of time, Nicole filed her Response on December 21, 2004.  Oral argument on the Motion to Dismiss was held on January 7, 2005.

II.  <u>Standard of Review</u>

Pursuant to Federal Rule of Civil Procedure 12(b)(6), this Court must determine whether the Complaint states any claim upon which relief could be granted.  <u>See</u> Fed. R. Civ. P. 12(b)(6).  In so doing, the Court accepts all well-pleaded factual assertions as true and draws all reasonable inferences from those assertions in the Plaintiff's favor.  <u>See Aybar v. Crispin-Reyes</u>, 118 F.3d 10, 13 (1st Cir. 1997).  A plaintiff is "required to set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory."  <u>Gooley v. Mobil Oil Corp.</u>, 851 F.2d 513, 515 (1st Cir. 1988).

---

[2] Nicole's and Donald's Answer contains a counterclaim for bad faith and breach of contract, to which Standard filed an Answer on November 8, 2004.

III. <u>Declaratory Judgment Act and Related State Litigation</u>

"One of the most litigated issues in our system of federalism is what effect a state court action has on a subsequent federal court suit involving the same parties and similar issues." <u>Brayton v. Boston Safe Deposit & Trust Co.</u>, 937 F. Supp. 150, 151 (D.R.I. 1996). This question of intersecting state and federal jurisdiction lies at the heart of Nicole's Motion to Dismiss. In this case, Nicole has sued her father, Donald, in Superior Court for negligent maintenance of the premises owned by him, while Standard, Donald's insurer, has brought suit against both Nicole and Donald in this Court, seeking declaratory relief under the Declaratory Judgment Act, regarding issues of insurance coverage.

Before turning to the merits of the parties' respective arguments regarding abstention, there is a threshold issue that must be addressed. For reasons unknown to this Court, Donald did not explicitly join in Nicole's Motion to Dismiss (Def.'s Mem. Supp. Dismiss at 4), or bring a separate Motion of his own. It is unclear whether Donald's conspicuous absence was intentional. At first blush, it appears that Donald has no intention of opposing Standard's declaratory judgment action -- Donald's attorney (who is different from Nicole's attorney, Dennis J. Tente) filed nothing more than an Answer and a Counterclaim in this action, and did not

4

even bother to appear at the hearing on Nicole's Motion to Dismiss. A more searching inquiry, however, suggests the opposite. Nicole's Response to Standard's Opposition, while requesting relief for Nicole only, is submitted on behalf of both Donald and Nicole, by "their" attorney, Mr. Tente. (Def.'s Response at 9.) While Attorney Tente has not entered a formal appearance on behalf of Donald, this filing constitutes an appearance on behalf of Donald pursuant to Rule 6(a) of the Local Rules of the United States District Court for the District of Rhode Island. Moreover, even if Attorney Tente were not acting as Donald's attorney for this Motion, the filing is strongly indicative of the parties' intent to jointly submit the Motion to Dismiss. Also, at oral argument, Attorney Tente indicated that he believed he was filing the Motion on behalf of both Nicole and Donald. (Hr'g, C.A. 04-351S, 1/7/05 (audio tape on file with district court) (hereinafter, "Hr'g, 1/7/05") ("[Nicole] is really . . . pressing all issues that her father would have as a party defendant.").) According to Attorney Tente, counsel for Donald was on board with this assumption. (<u>Id.</u> ("[W]hen we conferenced this case . . . [Donald's attorney] indicated to the Court that he was more or less joining to some degree in the motion that I was making and in whatever documentation that I was filing with the Court.").)

This Court may therefore treat Nicole's Response as amending her Motion to Dismiss to include Donald, where that appears to be the clear intent of the parties based upon their representations to this Court. Cf. Heyert v. State Farm Mut. Auto. Ins. Co., 2002 WL 5661, at *1 (9th Cir. Jan. 2, 2002) (unpublished opinion) (allowing appeal where party's intent to appeal could be fairly inferred). Amendment of the Motion, moreover, will not prejudice Standard, considering that the addition of Donald does not raise any legal arguments not already addressed by Standard (indeed, Nicole contends that she is pressing Donald's legal arguments in the Motion), and does not contribute to any delay. See Britton v. Cann, 682 F. Supp. 110, 113 (D.N.H. 1988) (allowing motion to dismiss to be amended to include objection that was inadvertently omitted, where amendment was sought in good faith, plaintiff would not be unduly prejudiced, and case would not be unduly delayed); see generally 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1194 (3d ed. 2004).

This approach is also consistent with the practical reality of this case. That is, the objective of Donald and Nicole in this Motion is to persuade this Court to abstain from consideration of Standard's request to have the coverage question resolved in federal court. They argue that this issue should be resolved by

6

one court (the Rhode Island Superior Court) and that they should not have to litigate in two separate courts.  Moreover, it is clear as a matter of common sense that Nicole is seeking recovery from Standard to compensate her for her injuries.  Presumably, Nicole does not wish to take her father's assets; she needs to sue her father, however, to get to Standard.  Nicole's attorney conceded as much at oral argument, noting that Nicole was not truly adverse to her father in the underlying tort suit.  (Hr'g, 1/7/05.)  So while it would be possible for this Court to read the present Motion in a narrow fashion, dismiss Nicole, and leave Donald as a defendant, this result would fail to address the policy-based abstention arguments raised in support of this Motion.  This result would seem to elevate form over substance, and would ignore the parties' (particularly Donald's and Nicole's) apparent intent.

Further, even if Donald's failure to formally join in the Motion is intentional, this Court still has jurisdiction to consider Nicole's Motion and her arguments in favor of abstention. It is well-settled that an insurer may bring a declaratory judgment action regarding liability coverage against an injured third party as well as the insured.  Md. Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 274 (1941) (holding that declaratory judgment action presented an actual controversy between insurer and injured third

party, where the latter could have proceeded directly against the former in certain limited circumstances pursuant to state law); see also Aetna Cas. & Sur. Co. v. Kelly, 889 F. Supp. 535, 537-38 (D.R.I. 1995) (insurance company brought declaratory judgment action against all parties to underlying tort suit, including injured third parties); see generally R.I. Gen. Laws § 27-7-2 (setting forth limited circumstances under which injured third party may proceed directly against insurer). It follows that a third party should therefore be allowed to bring a motion to dismiss such action. Hawkeye-Sec. Ins. Co. v. Schulte, 302 F.2d 174, 177 (7th Cir. 1962) (stating that "[i]t would be anomalous to hold . . . that an actual controversy exists between [the injured third party] and [the insurer] and yet deny [the injured third party] the right to participate in the controversy"). Therefore, this Court will consider fully the arguments in favor of abstention brought by Nicole and will consider them as brought on behalf of both Nicole and Donald.

Nicole argues that, as a result of her negligence action pending in state court, Standard's Motion for Declaratory Relief on the insurance coverage issues should be dismissed under the so-called Colorado River abstention doctrine. This doctrine, first enunciated in Colo. River Water Conserv'n Dist. v. United States,

424 U.S. 800 (1976), provides that a federal court may refuse jurisdiction in the face of duplicative state court proceedings when certain "exceptional circumstances" are present.  424 U.S. at 813.[3]  Nicole alleges that in the circumstances present here, the Colorado River factors weigh in favor of declining jurisdiction over this action.  Standard, on the other hand, argues that the exceptional circumstances necessary to invoke the Colorado River abstention doctrine, and to dismiss Standard's declaratory judgment action, do not exist in this case.

To the extent Nicole and Standard rely on Colorado River in support of their respective positions, neither party correctly states the legal standard governing this Court's determination of whether to dismiss a declaratory judgment action in favor of

---

[3] The Colorado River "exceptional circumstances" test consists of four factors:  "(1) whether either the federal or the state court has assumed jurisdiction over property, (2) 'the inconvenience of the federal forum,' (3) 'the desirability of avoiding piecemeal litigation,' and (4) 'the order in which jurisdiction was obtained by the concurrent forums.'"  Olivo Gonzalez v. Teacher's Ret. Bd., 208 F. Supp. 2d 163, 168 (D.P.R. 2002) (quoting Colo. River, 424 U.S. at 818).  In Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1 (1983), the Supreme Court added two more factors that district courts should consider when deciding whether a stay or dismissal is appropriate:  "(5) whether federal or state law controls (the 'source-of-law factor'), and (6) 'the probable [in]adequacy of the state-court proceeding to protect . . . [the parties'] rights.'"  Olivo Gonzalez, 208 F. Supp. 2d at 168 (quoting Moses H. Cone, 460 U.S. at 23-26).  For the sake of convenience, this Court refers to all six factors as the "Colorado River factors."

related state litigation.   While <u>Colorado River</u>'s "exceptional circumstances" test has previously been applied to declaratory judgment actions,[4] its application is no longer appropriate in this context.   See <u>Wilton v. Seven Falls Co.</u>, 515 U.S. 277, 286 (1995); <u>see also</u> Grace M. Giesel, <u>The Expanded Discretion of Lower Courts to Regulate Access to the Federal Courts After Wilton v. Seven Falls Co.: Declaratory Judgment Actions and Implications Far Beyond</u>, 33 Hous. L. Rev. 393, 437 (1996) (stating that "the abstention doctrine's exceptional circumstances requirement made necessary in <u>Colorado River</u> and <u>Moses H. Cone</u> does not apply to decisions regarding entertainment of declaratory judgment actions").   In <u>Wilton</u>, the Supreme Court made clear that a more forgiving, discretionary standard governs a district court's decision to stay[5] or dismiss a declaratory action, consistent with

---

[4] Prior to <u>Wilton</u>, there was considerable disagreement among circuit courts regarding whether to apply <u>Colorado River</u>'s "exceptional circumstances" test in the declaratory judgment context.   While some courts applied the test in this context, others refused to do so, "reason[ing] that, because of the [Declaratory Judgment Act's] permissive language, declaratory judgment cases d[id] not create the same unflagging obligation to exercise jurisdiction that exists in other kinds of cases." <u>Aetna</u>, 889 F. Supp. at 539.   Still other courts, including the First Circuit, took an intermediate position, applying the <u>Colorado River</u> factors in the declaratory judgment context while recognizing that "a declaratory judgment action may be dismissed on grounds that are less than 'exceptional.'" <u>Fuller Co. v. Ramon I. Gil, Inc.</u>, 782 F.2d 306, 309 n.3 (1st Cir. 1986).

[5] "A stay is as much a refusal to exercise federal jurisdiction as a dismissal." <u>Moses H. Cone</u>, 460 U.S. at 28.

the Declaratory Judgment Act.  See 515 U.S. at 286 (distinguishing Colorado River and Moses H. Cone, neither of which "dealt with actions brought under the Declaratory Judgment Act").

As the Court noted in Wilton, "[s]ince its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants."  Id.; see id. ("On its face, the [Declaratory Judgment Act] provides that a court 'may declare the rights and other legal relations of any interested party seeking such declaration . . . .'") (emphasis in original) (quoting 28 U.S.C. § 2201(a)); El Dia, Inc. v. Hernandez Colon, 963 F.2d 488, 493 (1st Cir. 1992) ("The Declaratory Judgment Act . . . neither imposes an unflagging duty upon the courts to decide declaratory judgment actions nor grants an entitlement to litigants to demand declaratory remedies.").  Such discretion endures "even when the suit otherwise satisfies subject matter jurisdictional prerequisites."[6]   Wilton, 515 U.S. at 282 (citing Brillhart v.

---

[6]  Nicole does not dispute that this Court has diversity jurisdiction over this action, pursuant to 28 U.S.C. § 1332. Standard is a Connecticut corporation with its principle place of business in Hartford, Connecticut, while Nicole and Donald reside within the state of Rhode Island.  In addition, given the nature of the claims in the underlying suit, it is apparent that the amount-in-controversy could well exceed $75,000. (Pl.'s Mem. Oppos. at 5.)

Nicole also does not dispute that this action constitutes an "actual controversy" for purposes of the Declaratory Judgment Act. A justiciable controversy, the Supreme Court has noted, is one

Excess Ins. Co. of America, 316 U.S. 491 (1942)). Under Wilton, it is this broad discretionary standard that guides the district court's determination whether to stay or dismiss a declaratory action, not the more stringent "exceptional circumstances test" enunciated in Colorado River.   See 515 U.S. at 286 ("Distinct features of the Declaratory Judgment Act . . . justify a standard vesting district courts with greater discretion in declaratory judgment actions than that permitted under the 'exceptional circumstances' test of Colorado River and Moses H. Cone."); Aetna, 889 F. Supp. at 539.[7]  As the First Circuit has noted, "[i]n the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to

which is not merely hypothetical, but rather is "definite and concrete, touching the legal relations of parties having adverse legal interests." Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240-41 (1937). In this case, "[t]he factors that will determine the relative duties and benefits under the insurance contract[] are independent of the underlying claim[] and are being presented in an adversarial context by parties with adverse interests." ACandS, Inc. v. Aetna Cas. & Sur. Co., 666 F.2d 819, 822-23 (3rd Cir. 1981). Therefore, even though "the exact sums to which the insurer may be liable to indemnify depend on the outcome of the underlying suit[]," the dispute between Standard and Nicole regarding liability insurance coverage is real and concrete. Id. at 823. It follows that Standard's declaratory judgment action is thus an "actual controversy."

[7] While this Court does not apply Colorado River's "exceptional circumstances" test, there is nevertheless some overlap in the factors enumerated under that test and the factors to be considered by this Court under a Wilton analysis, such as the source-of-law factor.

12

considerations of practicality and wise judicial administration." DeNovellis v. Shalala, 124 F.3d 298, 313 (1st Cir. 1997) (quoting Wilton, 515 U.S. at 288).

Such discretion, while broad, "is not unfettered." Travelers Ins. Co. v. La. Farm Bureau Fed'n, Inc., 996 F.2d 774, 778 (5th Cir. 1993). "The question for a district court presented with a suit under the Declaratory Judgment Act . . . is 'whether the questions in controversy between the parties to the federal suit, and which are not foreclosed under the applicable substantive law, can better be settled in the proceeding pending in the state court.'" Wilton, 515 U.S. at 282 (quoting Brillhart, 316 U.S. at 495). While the Supreme Court has declined to set forth an exclusive list of factors governing the proper exercise of this discretion, the Court has noted that district courts should look for guidance to the scope of the pending state court proceeding, the available state court defenses, and whether the claims of all parties in interest can be settled in the state court proceeding. Id. at 283. Specifically, where "parallel proceedings . . . presenting opportunity for ventilation of the same state law issues [are] underway in state court," the Court has held that these considerations "clearly support[]" a district's court's decision to stay or dismiss a declaratory judgment action. Id. at 290; see id.

13

("[W]here another suit involving the same parties and presenting opportunity for ventilation of the same state law issues is pending in state court, a district court might be indulging in '[g]ratuitous interference' if it permitted the federal declaratory action to proceed") (quoting <u>Brillhart</u>, 316 U.S. at 495); <u>see also</u> <u>Brillhart</u>, 316 U.S. at 495 ("Ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties."); <u>Fuller Co.</u>, 782 F.2d at 310 (quoting <u>Brillhart</u>, 316 U.S. at 494-95). In addition to these considerations, the <u>Wilton</u> Court noted that "[o]ther cases . . . might shed light on additional factors governing a district court's decision to stay or to dismiss a declaratory judgment action . . . ." <u>Wilton</u>, 515 U.S. at 283.[8]

---

[8] One Judge of this District has identified five primary factors for determining whether to stay or dismiss a declaratory judgment action in a case such as this one, which involves an underlying personal injury action in state court and an insurer's federal action for declaratory relief. These factors are: (1) whether the same parties are involved in both cases; (2) whether the claims made in the declaratory judgment action can be adjudicated in the state court action; (3) whether resolution of the declaratory judgment action turns on factual questions that will be litigated in the state court action; (4) whether the issues presented are governed by state or federal law; and (5) what effect the declaratory judgment action is likely to have on potential conflicts of interest between the insurer and the insured. <u>Employers Mut. Cas. Co. v. PIC Contractors, Inc.</u>, 24 F. Supp. 2d 212, 215 (D.R.I. 1998); <u>see</u> <u>Aetna</u>, 889 F. Supp. at 539-40. The

The Wilton factors provide the framework for considering the present motion. Of course, they should not be used as a "mechanical checklist," but rather must be carefully balanced as they apply in a given case. See Petricca v. FDIC, 349 F. Supp. 2d 64, 67 (D. Mass. 2004) ("A court in deciding whether to exercise its broad discretion to dismiss an action pending the outcome of a parallel state action should compare the nexus between the two suits, considering the totality of the circumstances"); cf. Moses H. Cone, 460 U.S. at 16 (finding that Colorado River factors were not "a mechanical checklist"). The relevant inquiry underlying these factors is whether proceeding with a declaratory judgment action will "provide the much needed source of enlightenment and clarification . . . as to the precise obligations and rights flowing between an insurer and an insured by reason of a contract of insurance," Employers' Fire Ins. Co. v. Beals, 240 A.2d 397, 401 (R.I. 1968), or whether it will "result in piecemeal litigation, duplication of effort and the possibility of inconsistent results," Employers Mut., 24 F. Supp. 2d at 215. For the reasons outlined below, when applied to the circumstances of this case, these factors weigh in favor of this Court's exercise of jurisdiction over Standard's declaratory judgment action.

---

first three factors, in particular, are useful in deciding whether federal and state court proceedings are "parallel."

15

IV.  <u>Wilton Analysis</u>

A.  <u>Are the federal and state court proceedings parallel?</u>

Seizing upon the Supreme Court's decision in <u>Wilton</u>, which held that a district court "acted within its bounds in staying [an] action for declaratory relief where parallel proceedings . . . were underway in state court," 515 U.S. at 290, Standard contends that the federal and state court proceedings in this case are not parallel (Pl.'s Mem. Oppos. at 8).  According to Standard, the federal and state court proceedings here, unlike those in <u>Wilton</u>, do not involve the same parties or the same issues.  (<u>Id.</u> at 19.) Nicole, on the other hand, argues that the proceedings are parallel, counseling in favor of dismissal of the declaratory judgment action.  (Def.'s Response at 4-5.)  <u>See</u> <u>Gov't Employees Ins. Co. v. Dizol</u>, 133 F.3d 1220, 1225 (9th Cir. 1998) ("If there are parallel state proceedings involving the same issues and parties pending at the time the federal declaratory action is filed, there is a presumption that the entire suit should be heard in state court.")

Under <u>Wilton</u>, the presence or absence of parallel state proceedings is clearly important, 515 U.S. at 290, yet questions remain about how the term "parallel" should be construed in the declaratory judgment context.  The Fifth Circuit has advocated a

very narrow reading, concluding that "what the Supreme Court meant in Wilton by use of the term 'parallel state proceedings,'" was an "identity of parties [and] issues in the state and federal court suits." Agora Syndicate, Inc. v. Robinson Janit'l Special'ts, Inc., 149 F.3d 371, 373 (5th Cir. 1998); see id. (holding that federal declaratory judgment action and state tort action were not parallel where insurer was not party to state tort suit). Conversely, the Ninth Circuit has interpreted "parallel" proceedings much more broadly. Polido v. State Farm Mut. Auto. Ins. Co., 110 F.3d 1418, 1423 (9th Cir. 1997) (reasoning that "differences in factual and legal issues between the state and federal court proceedings are not dispositive" to determination of whether to exercise discretionary jurisdiction), overruled on other grounds by Dizol, 133 F.3d 1220. Under the Ninth Circuit's reasoning, when examining whether a pending state court proceeding is "parallel,"

    [t]he fact that a federal and state action do not involve
    identical parties or issues is not dispositive . . . .
    Rather, there only need be an "overlap of factual
    questions between the two actions" and an available
    "procedural vehicle" in state court by which the federal
    plaintiff, even if not a party in the state action, may
    resolve the issues raised in the federal action.

17

<u>Medmarc Ins. Co. v. Berkeley Props., Inc.</u>, No. C 03-0259 MMC, 2003
WL 21018205, at *3 (N.D. Cal. Apr. 29, 2003) (quoting <u>Polido</u>, 110
F.3d at 1423).

While the First Circuit has not specifically addressed what
constitutes a "parallel proceeding" in the declaratory judgment
context post-<u>Wilton</u>, its broad construction of this term outside of
the declaratory judgment context supports the view that "parallel"
does not mean "identical."   <u>See</u> <u>Villa Marina Yacht Sales, Inc. v.
Hatteras Yachts</u>, 947 F.2d 529, 533, 536 (1st Cir. 1991) (finding
parallel proceedings despite lack of perfect identity of parties
and issues); <u>see also</u> <u>Ambrose v. New England Ass'n of Schs. and
Colls.</u>, 100 F. Supp. 2d 48, 50 (D. Me. 2000) (stating that "[s]uits
are  parallel  if  substantially  the  same  parties  litigate
substantially the same issues in different forums") (quoting
<u>McLaughlin v. United Virginia Bank</u>, 955 F.2d 930, 935 (4th Cir.
1992) (internal quotation marks omitted)).   The First Circuit's
broad reading of "parallel proceeding" in other contexts, together
with the better reasoning of those cases applying a broader
construction of the term in the declaratory judgment context,
strongly counsels in favor of a similar construction here.

Having settled on a broad definition of the term "parallel," this Court must consider whether the federal and state court proceedings in this case are, in fact, parallel.

### 1.  Are the same parties involved in both proceedings? Can all claims be adjudicated in state court?

Where the same parties are involved in related federal and state court actions, and where all claims made in the declaratory judgment action in federal court can be adjudicated in state court, a stay or dismissal of the declaratory judgment action may be appropriate. See Wilton, 515 U.S. at 283; Aetna, 889 F. Supp. at 540. Standard argues that since it is not a named party to Nicole's underlying state tort suit against Donald, the parties are not the same in both proceedings and therefore, Nicole's Motion to Dismiss must fail. (Pl.'s Mem. Oppos. at 9.)

As Nicole points out, in Aetna, Chief Judge Torres of this District stayed an insurer's federal declaratory action, notwithstanding the fact that the insurer was not a party to the underlying state court proceeding. 889 F. Supp. at 540. In that case, Judge Torres found that the claims of the unnamed insurer could be adjudicated satisfactorily in a state proceeding because the insurer "is an indirect participant in the underlying litigation and has the option of raising any coverage questions in state court pursuant to the Rhode Island Declaratory Judgment Act.

19

R.I. Gen. Laws § 9-30-1." _Id._; _see also_ Employers Mut., 24 F. Supp. 2d at 215.  While not a named party to the underlying state court proceeding, Standard, like the insurer in Aetna, is an "indirect participant" in the state court proceeding, whose claims can satisfactorily be adjudicated under the Rhode Island Declaratory Judgment Act.  _See_ Aetna, 889 F. Supp. at 540.  Both proceedings therefore "involve" the same parties, and all claims can be adequately settled in state court.  This conclusion is also good policy, for to hold otherwise might render federal and state proceedings nonparallel in those states (like Rhode Island) which limit or bar insurers from being made or joined as party defendants, while parallel in states that do not.  _See_ Allstate Ins. Co. v. Mercier, 913 F.2d 273, 278-79 (6th Cir. 1990) (holding that federal and state proceedings were sufficiently parallel, even though insurer was not a party in the underlying tort action and could not be made a party under state law); accord Am. Nat'l Fire Ins. Co. v. Hungerford, 53 F.3d 1012, 1016-17 (9th Cir. 1995), overruled on other grounds by Dizol, 133 F.3d 1220; see generally R.I. Gen. Laws § 27-7-2 (stating that "[a]n injured party . . . shall not join the insurer as a defendant").

The inquiry into whether the proceedings are "parallel" does not end here, however.  The Court must next determine whether the

federal and state court proceedings require resolution of common factual questions.

2.   <u>Do both proceedings depend on resolution of common factual questions?</u>

Where adjudication of a declaratory judgment action requires resolution of factual questions that will be litigated in the underlying state court proceeding, practicality and wise judicial administration would counsel against proceeding with the declaratory judgment action.  <u>See</u> <u>Metro. Prop. & Liab. Ins. Co. v. Kirkwood</u>, 729 F.2d 61, 62 (1st Cir. 1984).  On the other hand, if there are no common factual issues, proceeding with the declaratory judgment action is generally appropriate.

At issue in Standard's declaratory judgment action is whether Standard's duty to defend and indemnify Donald is voided based upon the application of one or more exclusions to coverage contained in the Policy.[9]  (Pl.'s Mem. Oppos. at 10.)  The issue presented in

---

[9] According to Standard, the Policy specifically excludes personal liability and coverage for medical payments for injuries:  (i) "arising out of the rental or holding for rental of any premises by any insured"; (ii) "arising out of or in connection with a business engaged in by any insured"; and (iii) "arising out of a premises . . . owned by any insured . . . that is not an insured location" (i.e., that is not "the residence premises").  The Policy also excludes personal liability coverage for injuries to a relative of a covered person "who is a resident of the household of that person."  In addition, the Policy is void if the insured has "(a) intentionally concealed or misrepresented any material fact or circumstance; (b) engaged in fraudulent conduct; or (c) made false statements relating to this insurance."  (Pl.'s Compl. Decl. Relief at 3-4.)  For the sake of convenience, this Court treats the fraud

the underlying tort action, on the other hand, is whether Donald negligently maintained the premises that he rented to his daughter. (Id. at 9-10.) Standard argues that "the issues presented in the underlying tort action are separate and distinct from the issues in the declaratory judgment action," and therefore, "a decision on [the Policy's] exclusions is not dependant upon any factual issue being decided in the underlying tort action." (Id.) Nicole, on the other hand, argues that the declaratory judgment action requires resolution of factual questions present in the underlying tort litigation, namely, whether Donald failed to make repairs to the premises. (Def.'s Response at 5.) "Evidence of [Donald's] failure to make repairs," Nicole contends, "clearly buttresses [Standard's] Declaratory Judgment position that Donald never intended to move into 52 Lake Street," and that he therefore should not be entitled to coverage under the Policy. (Id.) The problem, according to Nicole, is that evidence of Donald's failure to make repairs is also "significant evidence of his failure to exercise reasonable care," given Nicole's allegations that Donald's failure to repair certain deficiencies on the premises led to her fall. (Id.) These overlapping factual inquiries, Nicole argues, render

---

provision voiding the Policy as an "exclusion" under the Policy in the discussion that follows.

the proceedings parallel, and counsel against hearing the declaratory judgment action.[10]

Here, the declaratory judgment action and underlying tort action do not involve resolution of the same factual questions. Notwithstanding Nicole's arguments to the contrary, Donald's

---

[10] In addition to urging this Court not to decide whether Standard has a duty to defend or indemnify Donald in light of parallel proceedings in state court, Nicole argues in the alternative that this Court should rule on the merits that Standard has a duty to defend Donald.    Under Rhode Island law, the duty to defend is broader than the duty to indemnify. Beals, 240 A.2d at 403.    While determination of an insurer's duty to indemnify requires resolution of factual questions that may overlap with questions in a pending state proceeding, determination of the duty to defend generally requires "nothing more than comparing the allegations in the complaint with the terms of the policy.    If the facts alleged in the complaint fall within the risks covered by the policy, the insurer is obligated to defend.    Otherwise, it is not." Aetna, 889 F. Supp. at 541 (citing Flori v. Allstate Ins. Co., 388 A.2d 25 (R.I. 1978)).    Nicole contends that the manner in which her injuries occurred, as indicated in her state court complaint, "raise a reasonable possibility of coverage," and therefore, Standard's request for a determination that it has no duty to defend should be dismissed with prejudice. (Def.'s Response at 6 (quoting Aetna, 889 F. Supp. at 541).)

While this Court recognizes that the pendency of state court proceedings does not prevent this Court from deciding on the merits whether Standard has a duty to defend, this Court is nevertheless unable to make such a determination at this time.    "As a general rule . . . the insurer's duty to defend is ascertained by laying the tort complaint alongside the policy" -- here, the parties have provided neither. Beals, 240 A.2d at 402.    Taking all facts in the light most favorable to Standard, this Court cannot say for certain that Nicole's allegations of negligence raise a reasonable possibility of coverage under the Policy.    Nicole's Motion to Dismiss with prejudice Standard's request to be relieved of its duty to defend must therefore be denied.

23

failure to make repairs, while relevant to a showing of negligence in the underlying tort action, has little to do with the determination of the insurance coverage question in the declaratory judgment action. Nicole assumes that this Court is being asked to decide whether Donald failed to make repairs. It is not.[11] Standard simply seeks a judgment declaring, among other things, that it has no duty to defend or indemnify Donald based on several exclusions to the Policy. (Pl.'s Compl. Decl. Relief at 6-7.) Notably absent from the Policy is any exclusion for the failure to make repairs. This Court's determination of whether declaratory relief should be granted therefore does not turn on whether Donald failed to make repairs, but rather on other distinct factual questions, including: whether Donald rented the premises or held the premises out for rental; whether Donald purchased the home with an intent to sell it; whether Donald resided there (i.e., whether the home was an "insured location"); whether Nicole is a relative

---

[11] In the "Factual Allegations" section of the Complaint for Declaratory Judgment, Standard asserts that Donald "never performed any repairs or renovations to the premises at any time material hereto." (Pl.'s Compl. Decl. Relief at 2.) While, for purposes of this Motion, this fact must be assumed to be true, nevertheless, this Court is not being asked to declare whether this allegation is in fact true. Therefore, the question of whether Donald failed to make repairs, for the reasons further discussed below, is not before this Court.

of Donald and resident of his household; and whether Donald made material misrepresentations in obtaining the Policy.

Adjudication of the coverage issue (and the above factual questions) simply does not require a finding as to whether Donald did or did not make repairs. While Nicole argues that the failure to make repairs would "buttress[]" Standard's position that Donald did not intend to move into the home, thereby affecting insurance coverage, Donald's alleged failure could just as easily have been the result of scarce resources or procrastination, which would not appear to affect coverage. Moreover, even if Donald made such repairs, this would not necessarily suggest that his intent was to move into the home. Indeed, this fact could cut the other way -- supporting his intent to fix the place up so he could rent or sell the property. Because it is unclear what impact, if any, Donald's failure to make repairs may have on this Court's determination of coverage, this is not the sort of common factual question justifying dismissal. See Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 127-28 (1968) (holding dismissal of insurer's federal declaratory judgment action was improper despite common factual questions, where "ultimate" question of fact in federal proceeding "had no bearing on" ultimate question in state tort suit).

The factual questions requiring resolution in this declaratory judgment action do not include Donald's failure to make repairs, and are thus completely unrelated to adjudication of his tort liability. Nicole's assertion that the federal and state court proceedings are parallel, while supported by the fact that the parties involved in the case are the same, fails on account of the distinct factual questions involved in the federal and state proceedings. This lack of parallelism weighs strongly against this Court's dismissal of the declaratory judgment action. Compare Agora Syndicate, Inc., 149 F.3d at 373 (concluding that proceedings were not parallel and were therefore improperly dismissed, where state court decision on issues of negligence "would have no direct bearing on the insurance company's duty to defend and the scope of policy coverage; a federal decision on the insurance issues would likewise have no impact on state court liability issues"), with Mercier, 913 F.2d at 279 (holding that dismissal of declaratory judgment action was proper where federal action paralleled state action "in the sense that the ultimate legal determination in each depends upon the same facts").

This case is therefore distinguishable from Aetna, in which Judge Torres stayed an insurer's request for declaratory relief regarding its duty to indemnify various church officials for their

role in the sexual assault of the tort victims. See Aetna, 889 F. Supp. at 542. In that case, the church officials' entitlement to indemnification and their liability in tort turned on exactly the same "central" question -- whether the officials were aware of the alleged abuse. Id. at 542. By contrast, while Donald's liability in state court may turn on whether he failed to make repairs, Standard's duty to defend or indemnify depends on the answers to a very different set of factual questions. See Employer's Mut., 24 F. Supp. 2d at 217 (dismissing insurer's declaratory judgment action where evidence required to determine coverage under insurance policy -- i.e., when insured's injuries were discovered or discoverable -- was "inextricably intertwined with the evidence regarding causation and damages that will be presented in the underlying litigation"); see also Nationwide Ins. v. Zavalis, 52 F.3d 689, 693 (7th Cir. 1995) (dismissing declaratory judgment where resolution of insurer's duty to indemnify "would necessarily require" resolution of factual question at heart of state court action -- i.e., whether property damage was intentional); Beals, 240 A.2d at 402.

In support of dismissal, Nicole also cites Imperial Cas. & Indem. Co. v. Bellini, 753 F. Supp. 58 (D.R.I. 1991), another case in this District in which the Court dismissed an insurer's

declaratory judgment action under facts similar to those in this case. _Bellini_ involved a state tort suit against a corporate property owner arising out of a slip-and-fall injury, and an insurer's declaratory judgment action in federal court as to its duty to indemnify the insured who was part-owner of the corporation. 753 F. Supp. at 59. Decided prior to the Supreme Court's decision in _Wilton_, the _Bellini_ court did not specifically address whether the federal and state proceedings required resolution of common factual issues that might lead to inconsistent rulings. Rather, _Bellini_ held that "the two actions are inextricably intertwined and dependant" based on the fact that the coverage issue might be mooted by a finding of no liability in the underlying tort action, and likewise, a determination of coverage might lead to settlement of the tort case. _Id._ at 60. The decision in _Bellini_ does not change the analysis here. In the first place, _Bellini_ was decided under the _Colorado River_ factors, and thus contained no analysis of those factors enumerated in _Wilton_, which focus squarely on whether the federal declaratory judgment action requires resolution of factual questions presented in the state court case. Furthermore, even if the _Bellini_ court had made a _Wilton_-type inquiry and arrived at the same conclusion, the holding in _Bellini_ was the result of the balancing of several

factors, not the least of which was the respective progress of the
state and federal proceedings.  See id.  In that case, the federal
declaratory judgment action was filed almost two years after the
underlying tort action, which had reached the trial stage, and
therefore, "[t]he advantage of obtaining such an advance
determination [wa]s largely lost."  Id.  In this case, by contrast,
Standard filed its action within approximately three months of
Nicole's tort suit, and no substantial discovery has taken place in
either action.  (See Def.'s Mem. Supp. Dismiss at 3.)

> B.  Even if the federal and state court proceedings are not
>     parallel, do other factors weigh in favor of dismissal?

While Wilton makes clear that a district court may properly
stay or dismiss adjudication of a declaratory judgment action where
parallel proceedings are pending in state court, it also counsels
that the absence of parallel proceedings does not compel the
district court to entertain the action.  See 515 U.S. at 290 ("We
do not attempt at this time to delineate the outer boundaries of
[district courts'] discretion in . . . cases in which there are no
parallel state proceedings.").  Where there are no parallel state
proceedings, the decision to adjudicate a declaratory judgment
action remains discretionary.  See id. at 288 ("'[t]here is . . .
nothing automatic or obligatory about the assumption of
'jurisdiction' by a federal court' to hear a declaratory judgment

action") (quoting E. Borchard, <u>Declaratory Judgments</u> 313 (2d ed. 1941)); <u>Golden Eagle Ins. Co. v. Travelers Cos.</u>, 103 F.3d 750, 754 (9th Cir. 1996) ("nothing in the Declaratory Judgment Act requires a parallel state proceeding in order for the district court to exercise its discretion to decline to entertain the action"), <u>overruled on other grounds by</u> <u>Dizol</u>, 133 F.3d 1220. As the Fourth Circuit has noted, "[t]he existence or nonexistence of a state court action is simply one consideration relevant to whether to grant declaratory relief." <u>Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.</u>, 139 F.3d 419, 423 (4th Cir. 1998) (quoting district court); <u>see</u> <u>Golden Eagle</u>, 103 F.3d at 754 ("Clearly, the existence of a parallel state proceeding would be a major factor in the district court's consideration of 'practicality and wise judicial administration,' but the absence of a parallel state proceeding is not necessarily dispositive."). This Court therefore turns to several additional considerations to determine whether Standard's declaratory judgment action should be dismissed, mindful that while it retains broad discretion, "there is little reason to dismiss . . . . [f]ederal declaratory relief actions that do not involve parallel state court proceedings." <u>Ark Telecomm., Inc. v. State Farm Fire and Cas. Co.</u>, No. 95-56678, 1997 WL 355891, at *2 (9th Cir. June 27, 1997).

1.   Source of law

As Nicole points out, and Standard concedes, the insurance coverage issues raised in the declaratory judgment action are governed by state law. (Pl.'s Mem. Oppos. at 17; Def.'s Mem. Supp. Dismiss at 3.)  As noted above, these issues include Standard's duty to defend Donald in the underlying state tort action and to indemnify Donald in the event he is found liable, based on several exclusions to the Policy. (Pl.'s Mem. Oppos. at 10.)  While the absence of any federal law issue weighs in favor of dismissing Standard's declaratory judgment action, it is not dispositive. See BFI Waste Sys. of N. Am., Inc. v. Travelers Cas. and Sur. Co., No. 94-507-JD, 1999 WL 813879, at *6 (D.N.H. Oct. 6, 1999) ("While state rather than federal law controls the issues in this case, that factor alone does not sway the balance in favor of abstention.").  "[T]he state's interest, while important, is diminished" in cases such as this one, where "the state-law issues are not novel, unsettled, difficult, complex, or otherwise problematic." First Fin. Ins. Co. v. Crossroads Lounge, Inc., 140 F. Supp. 2d 686, 695 (S.D. W. Va. 2001).  By deciding to hear Standard's declaratory judgment action, this Court is not, therefore, "elbow[ing] its way . . . to render what may be an 'uncertain and ephemeral' interpretation of state law." Mitcheson

v. Harris, 955 F.2d 235, 238 (4th Cir. 1992) (quoting Pennhurst
State Sch. & Hosp. v. Halderman, 465 U.S. 89, 122 n.32 (1984)).  On
the contrary, the judges of this District have routinely addressed
the issues raised by Standard's declaratory judgment action,
including an insurer's duty to defend and indemnify under Rhode
Island law.  See, e.g., Foxon Packaging Corp. v. Aetna Cas. & Sur.
Co., 905 F. Supp. 1139 (D.R.I. 1995).[12]

## 2.   Conflicts of interest

A further consideration in the insurance context is "whether
the insurer is confronted with a conflict of interest that would
affect its defense of the insured in the underlying tort suit. . .
. The prospect that such conflicts may be eliminated is a weighty
reason for proceeding with a declaratory judgment action."  Aetna,
889 F. Supp. at 540.  The converse is, of course, also true -- the

---

[12] Nicole argues that "there is also a significant state law
question as to whether [Donald] has been notified of his options
regarding legal counsel by [Standard]."  (Def.'s Mem. Supp. Dismiss
at 3.)  This Court disagrees.  In the first place, this issue is
not before this Court.  Standard has not requested declaratory
relief on the claim that it has no duty to notify Donald of his
options regarding the appointment of independent counsel as part of
its duty to defend.  Rather, Standard seeks a judgment declaring
that it has no duty to defend at all.  (Pl.'s Compl. Decl. Relief
at 6-7.)  Furthermore, even if this issue were before this Court
for determination, it is by no means novel.  On the contrary,
judges in this District have addressed this type of claim on
several prior occasions.  See, e.g., Hartford Cas. Ins. Co. v. A &
M Assoc., Ltd., 200 F. Supp. 2d 84, 91 (D.R.I. 2002); Aetna, 889 F.
Supp. at 542.

32

prospect that adjudication of the declaratory judgment action will create conflicts of interest counsels against proceeding with a declaratory judgment action.  Id.  Neither situation is present here.  Standard, like Donald, has every reason to dispute Nicole's claim that Donald failed to repair the premises in the underlying tort action, for if Donald is found liable, Standard may be required to indemnify him.  This is therefore not a case where the insured faces potential liability for conduct covered and not covered by the policy, such that "the insurer's interest in attributing any liability to uncovered conduct diverges from the insured's interest in attributing any liability to covered conduct."  Id.  Because there is no incentive for Standard to accept Nicole's argument that Donald failed to make repairs in the state court proceeding, there is no conflict of interest to be remedied.  See Kirkwood, 729 F.2d at 63 (upholding declaratory judgment action where "conflict of interest existed that would have prevented the insurance company from managing the insured's defense in an underlying tort suit").

Nicole argues that by adjudicating the declaratory judgment action, this Court would create a conflict of interest by converting Standard and Donald from allies to adversaries with respect to the issue of Donald's failure to make repairs.  "The

failure to initiate repairs," Nicole argues, "is evidence that would support Standard's claim of no coverage" in the declaratory judgment action, "but would place Standard in an adversarial position with [Donald], comprising a significant conflict of interest in the state court case."   (Def.'s Response at 7.) Because this Court need not reach the issue of whether Donald failed to make repairs, and because, as discussed above, the issue could cut either way, the relationship does not reach the point of becoming adversarial.   Standard's declaratory judgment action is therefore not inconsistent with its obligations as an insurer to protect Donald from third-party claims based on matters covered by the Policy.

     This case is thus again distinguishable from Aetna, where the insurer's contention, in the declaratory judgment action, that church officials had knowledge of sexual abuse was "critical to adjudication of the [church officials'] tort liability" in the state court proceeding.  Aetna, 889 F. Supp. at 541. By proceeding with the declaratory judgment action, the insurer in Aetna, in effect, sought to prove the church officials liable in tort, thereby "subvert[ing] the purpose of the policy and violat[ing] one of the most fundamental duties it owes to its insured." Id. at 542; see id. (staying declaratory judgment action with respect to

insurer's duty to defend, where "[insurer's] grounds for disclaiming any duty to defend require[d] it to prove facts that would establish the . . . defendants' liability to the tort plaintiffs"); see also Employers Mut., 24 F. Supp. 2d at 217 (upholding declaratory judgment action with respect to duty to defend, where "there is no danger that rendering a declaratory judgment on [the duty to defend] will expose the companies to liability in the underlying suits," and therefore no "risk that proceeding with the declaratory judgment action would create a conflict of interest"; dismissing declaratory judgment action with respect to duty to indemnify, where proceeding with declaratory judgment action "would cast [insurer] in the role of adversary to [insured] companies in the underlying suits"). Because the underlying tort case presents no conflict of interest to be remedied, and because adjudication of the declaratory judgment action creates no conflict of interest to be avoided, this factor weighs neither in favor of nor against this Court's dismissal of the declaratory judgment action.

C.   Does the balance of factors counsel for or against dismissal?

Based upon a balancing of relevant factors, this Court finds that considerations of practicality and wise judicial administration weigh in favor of adjudication of Standard's

declaratory judgment action. As discussed above, the federal and state proceedings are not parallel, because although they involve the same parties (broadly defined), they do not require resolution of common factual questions; there are no complex or novel issues of state law to be decided; and no conflict of interest will result from this Court's exercise of jurisdiction.[13]

Policy considerations also support this Court's decision. As the First Circuit has noted, "[i]nsurers often need immediate guidance as to whether they have an ongoing obligation to defend:

---

[13] Because Nicole's Motion to Dismiss fails under <u>Wilton</u>'s broad discretionary analysis, it necessarily also fails under <u>Colorado River</u>'s more stringent "exceptional circumstances" test. Therefore, this Court need not undertake an in-depth analysis of each of the <u>Colorado River</u> factors, as both parties would have this Court do. This Court merely notes that because the declaratory judgment action does not depend on the resolution of factual questions to be litigated in the underlying tort suit, there is no risk of piecemeal litigation. See <u>Travelers Indem. Co. v. Madonna</u>, 914 F.2d 1364, 1369 (9th Cir. 1990) (stating that "[p]iecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results"). In addition, the order in which jurisdiction was obtained by the federal and state courts is of little consequence in this case, where the declaratory judgment action was brought just three months after the underlying tort suit, and where, as Nicole admits, no substantial discovery has taken place in either action. (Def.'s Mem. Supp. Dismiss at 3.) See <u>Moses H. Cone</u>, 460 U.S. at 3 (stating that "priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions"); <u>see also Woodward v. Sentry Select Ins. Co.</u>, No. Civ.A. 03-2481, 2004 WL 834634, at *4 (E.D. La. Apr. 16, 2004) (stating that "when state and federal suits are proceeding at approximately the same pace, th[is] . . . weighs against abstention"). The remaining factors are either neutral or overlap with factors already considered under this Court's <u>Wilton</u> analysis.

if they refuse, they may be in breach of contract or worse, and if they accede, they sometimes find they have prejudiced their position." Hartford Fire Ins. Co. v. R.I. Pub. Transit Auth., 233 F.3d 127, 132 (1st Cir. 2000). The Supreme Court of Rhode Island has also highlighted the value to an insurer of securing, with expediency and fairness, "an advance determination as to its contractual duty to defend or indemnify one of its policyholders." Beals, 240 A.2d at 401. By rendering a prompt declaratory ruling in this case, this Court will promote wise judicial administration by clarifying the parties' legal relations vis-à-vis each other, affording relief from the uncertainty giving rise to the declaratory judgment action, and "assisting the parties in evaluating their respective positions for settlement purposes." Aetna, 889 F. Supp. at 543; see also Concise Oil & Gas P'ship v. La. Intrastate Gas Corp., 986 F.2d 1463, 1471 (5th Cir. 1993); Aetna Cas. & Sur. Co. v. Rock, No. 93-639B, 1997 WL 580594, at *3 (D.R.I. Feb. 23, 1997) ("It is entirely proper to seek a declaration of the parties' rights and responsibilities under these circumstances, if only to aid the parties in their attempts to settle or litigate the underlying suit against the insured.").

While this Court's decision necessarily deprives Nicole of litigating solely in her chosen forum, this Court is "aware of no

law giving [the movant] an absolute preference." <u>Kirkwood</u>, 729
F.2d at 64.   After all, "[t]he declaratory judgment rule, Fed. R.
Civ. P. 57, states that an action can be maintained despite the
'existence of another adequate remedy.'" <u>Id.</u> (quoting Fed. R. Civ.
P. 57).   Furthermore, Nicole "points to no harm or prejudice" that
will befall her should this Court decline to dismiss Standard's
claim, other than the increased costs of conducting discovery in
two civil actions as opposed to one.   (Def.'s Mem. Supp. Dismiss at
3.)   As the First Circuit has noted (under a <u>Colorado River</u>
analysis), "[d]uplication and inefficiency are not enough to
support a federal court's decision to bow out of a case over which
it has jurisdiction." <u>Villa Marina Yacht Sales, Inc. v. Hatteras</u>
<u>Yachts</u>, 915 F.2d 7, 13 (1st Cir. 1990).

V.   <u>Conclusion</u>

        For all of the foregoing reasons, Nicole's Motion to Dismiss
Standard's declaratory judgment action is DENIED.


IT IS SO ORDERED.


_____
William E. Smith
United States District Judge

6/10/05


38