UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

THE STANDARD FIRE
INSURANCE COMPANY

V. C.A.NO.: 04-351S

DONALD GORDON AND
NICOLE LEA GORDON

**PLAINTIFF, THE STANDARD FIRE INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT**

Now comes the Plaintiff, The Standard Fire Insurance Company, and hereby moves this Honorable Court for Summary Judgment in the above-captioned matter. Plaintiff further relies on its reasons set forth in its Memorandum of Law appended hereto.

Respectfully submitted,
Plaintiff, The Standard Fire
Insurance Co.,
By its attorneys,

Ronald Langlois, # 2891
Smith & Brink, P.C.
One State Street, Suite 400
Providence, RI 02908
Tel: (401) 351-9970
Fax: (401) 274-6218

**CERTIFICATION**

I hereby certify that I mailed a true copy of the within to **Robert Flaherty, Esquire, Gregory Sorbello, Esquire**, Flaherty & Lawrence, 70 Jefferson Boulevard, Warwick, RI 02888 and **Dennis J. Tente, Esquire**, Coletti & Tente, 311 Doric Avenue, Cranston, RI 02910 on the 9th day of August, 2005.

Dana Palangio

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

THE STANDARD FIRE
INSURANCE COMPANY

V. C.A.NO.: 04-351S

DONALD GORDON AND
NICOLE LEA GORDON

# PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

## PRELIMINARY STATEMENT

This is a declaratory judgment action in which the Standard Fire Insurance Company (hereinafter "Standard") seeks a determination as to whether "Standard" has a duty to defend and indemnify Donald Gordon in the matter of Nicole Gordon v. Donald Gordon, Washington County Superior Court, C.A.No: 04-0248.

The underlying lawsuit arises out of incident, which occurred on July 25, 2002, at a residence located at 52 Lake Street, Wakefield, Rhode Island, which the Defendant, Donald Gordon owned. For reasons that are presently unknown, Mr. Gordon's adult emancipated daughter, Nicole Gordon, fell down a set of stairs while residing at the premises with her boyfriend.

On or about April 19, 2004, Nicole Lea Gordon filed a suit against her father for negligently maintaining the premises at 52 Lake Street. The Standard Fire Insurance Company is presently providing a defense to Mr. Gordon in that action pursuant to a reservation of rights.

Mr. Gordon purchased the property on April 11, 2002, but as of October 25, 2002, had not moved into 52 Lake Street. At the time of the incident, Mr. Gordon resided at 46

Shadow Farm Way, Wakefield, Rhode Island. Indeed, prior to the incident, Mr. Gordon had never resided at the premises.

It is undisputed that prior to the incident Mr. Gordon did not inform The Standard Fire Insurance Company that he had not moved into the premises nor, did he inform them that he was renting the premises.

**CONCISE STATEMENT OF UNDISPUTED MATERIAL FACTS**

1. On or about April 11, 2002, Defendant, Donald Gordon purchased a residential premises at 52 Lake Street, South Kingstown, Rhode Island, (hereinafter the "premises"). (See Plaintiff's allegation in Declaratory Judgment Action ¶4 and Defendants' admission to same)

2. At or about the time the Defendant, Donald Gordon, purchased the premises, he applied for homeowners insurance with Standard Fire Insurance Company (hereinafter "Standard"). In applying for homeowners insurance with "Standard", Defendant, Donald Gordon represented that the "premises" was intended to be his primary residence. (See Plaintiff's allegation in Declaratory Judgment Action ¶5 and Defendants admission to same)

3. From the date the Defendant, Donald Gordon, purchased the premises to the time of the accident of July 25, 2002, the Defendant never resided at the property. Donald Gordon was residing at 46 Shadow Farm Way, Wakefield, Rhode Island.

4. At no point in time prior to July 25, 2002 did Defendant, Donald Gordon inform Standard that he did not intend to make the premises his primary residence. (See Plaintiff's allegation in Declaratory Judgment Action ¶12 and Defendants admission to same)

5. At no point in time prior to July 25, 2002 did Defendant, Donald Gordon inform Standard that he rented the premises to his daughter, Defendant, Nicole Lea Gordon. (See Plaintiff's allegation in Declaratory Judgment Action ¶11 and Defendants admission to same)

6. On or about July 25, 2002, Defendant, Nicole Lea Gordon, was involved in an accident at the premises where she alleges "she attempted to turn on a light at the top of the stairway which did not come on....took a few steps in the darkness fell over the stair railing which was less than three feet high, striking a radiator in the foyer of the first floor". (See Plaintiff's allegation in Declaratory Judgment Action ¶14 and Defendants admission to same)

7. Defendant, Nicole Lea Gordon, through her agents, servants and employees has filed a suit against her father for negligently maintaining the premises at 52 Lake Street. (See Plaintiff's allegation in Declaratory Judgment Action ¶20 and Defendants admission to same)

8. "Standard" issued a Homeowners Policy to Donald Gordon, Policy Number 947642984 6331 with a policy period of April 11, 2002 to April 11, 2003.

9. Standard's Homeowners Policy provides in pertinent part:

Coverage E – Personal Liability and Coverage F – Medical Payments to Others do not apply to bodily injury…

e. Arising out of a premises:
(1) owned by an insured;
(2) rented to any insured; or
(3) rented to others by any insured;
that is not an insured location.

10. Definitions

"Insured location" means:

a. The residence, premises;

"Residence premises" means the one or two family dwelling, other structures, and grounds, or that part of any other building where you reside and which is shown as the residence premises in the declaration. (Exhibit "A" – Homeowner's Policy)

11. It is undisputed that the premises owned by Donald Gordon is not an insured location because he did not reside at the premises.

**INSURANCE**

Standard Fire Insurance Company insured the property in question pursuant to a homeowner's policy. Mr. Gordon signed an application for insurance, where he responded to the following questions:

4. Any other residence owned, occupied or rented?

Answer: No.

19. Is building undergoing renovation or reconstruction:

Answer: No.

Standard's Homeowner's Insurance Policy provides in pertinent part:

*Coverage E – Personal Liability*

*If a claim is made or a suit is brought against any insured for damages because of bodily injury... caused by an occurrence... we will:*

*a. Pay up to our limit of liability for the damages for which the insured is legally liable.*

*SECTION 2 – Exclusions*

*1. Coverage E – Personal Liability and Coverage F – Medical Payments to Others do not apply to bodily injury...*

*f. Arising out of a premises:*
*(1) owned by an insured;*
*(2) rented to any insured; or*
*(3) rented to others by any insured;*
*that is not an insured location.*

***Definitions***

*"Insured location" means:*

*b. The residence, premises;*

*"Residence premises" means the one or two family dwelling, other structures, and grounds, or that part of any other building where you reside and which is shown as the residence premises in the declaration.*

## II. ARGUMENT

Standard of Review

A policy of insurance is a contract between the insurer and the insured and should be construed in the same way. When the terms of an insurance policy are clear and unambiguous, judicial construction is at an end. The contract terms must be applied as

written and the parties are thereby bound by them. Amica Mut. Ins. Co. v. Streicker, 583 A.2d 550 (R.I. 1990).

The policy's terms are viewed in light of the nature and kind of risks which are covered by a policy. In this regard, the favored interpretation of an insurance policy is one which "best effectuates the manifested design of the parties". Worcester Mutual Ins. Co. v. Marnell, 398 Mass. 240, 245 (1986). Concomitantly, the terms of an insurance policy are construed in their plain, ordinary and popular sense. Appleman, Insurance Law and Practice, Vol. 6d §4254, pp. 24-25.

Viewing the issue presented in light of these principles illuminates the fact that Donald Gordon is not entitled to coverage for the incident in question.

Standard's Homeowner's Insurance Policy provides in pertinent part:

*Coverage E – Personal Liability*

*If a claim is made or a suit is brought against any insured for damages because of bodily injury... caused by an occurrence... we will:*

*a. Pay up to our limit of liability for the damages for which the insured is legally liable.*

*SECTION 2 – Exclusions*

*1. Coverage E – Personal Liability and Coverage F – Medical Payments to Others do not apply to bodily injury...*

***g. Arising out of a premises:***
***(1) owned by an insured;***
*(2) rented to any insured; or*
*(3) rented to others by any insured;*
***that is not an insured location. (Emphasis Supplied)***

***Definitions***

*"Insured location" means:*

*c. The residence, premises;*

> ***"Residence premises" means the one or two family dwelling****, other structures, and grounds, or that part of any other building* ***where you reside and which is shown as the residence premises in the declaration. (Emphasis Supplied)***

Numerous courts have held the aforementioned policy provision is clear and unambiguous and that in order to provide coverage, the policyholder must reside at the premises shown in the declaration. Here, it is undisputed that:

(a) Mr. Gordon was not residing at the premises at the time of the incident;

(b) Mr. Gordon had never resided at the premises prior to the incident.

Thus, he is not entitled to coverage.

In Bolivar v. Blue Ridge Insurance Company, 1999 Conn. Super LEXIS 2815, the court held that the homeowner's policy did not provide coverage for premises where the insured did not live, as it did not constitute a resident premises as defined in the policy. Id. at 8. The court held:

> It is apparent that the subject homeowner's insurance policy, when read as a whole, was written to insure a premises where the insured resides or dwells as those terms are most commonly used. Id. at 7.

The court went on to hold:

> In conclusion, when read in the context of the homeowner's policy as a whole, neither the term "resident premises" nor the endorsement is ambiguous and the court cannot torture words to import ambiguity. (Citations omitted) The policy does not cover the … premises because the plaintiffs do not reside, nor have they ever resided at those premises. Accordingly, the Defendant's motion for summary judgment is granted. Id. at 9.

A similar result was reached in Georgia Farm Bureau Mutual Insurance Company v. Kephart, 211 Ga. App. 423; 439 SE.2d 682 (1993). There, a policyholder's house was destroyed by fire. The insured sought to recover the insurance proceeds for the home which the insurer denied. The evidence demonstrated that the insured and her then

husband bought the property which was titled in both of their names. When the marriage between the policyholder and her husband began to falter, the policyholder instructed the insurer to remove her husband's name from the policy. Later, the policyholder's ex-husband and his girlfriend moved into the house, while the policyholder moved to another location. Subsequently, the home was destroyed by a fire. Id. at 424. It was the insurer's position that since the policyholder did not reside at the premises, "no coverage existed on the policy because exclusive residence and the residence premises was required by the terms of the policy". Id.

There, as in the instant case, residence premises was defined as "(a) the one family dwelling, other structures, and grounds, or (b) that part of any building; where you reside and which is shown as the 'residence premises' in the Declarations." Id. The court held that:

> Giving the language of the policy in issue its plain and ordinary meaning, it requires that the named insured live in the residence listed on the declaration page and that the listed resident be the named insured's only residence. Id. at 424-25.
>
> The court held:
>
> Because the evidence established that [the policyholder] did not live at the house... at the time of the fire, and the policy unambiguously required her as the named insured, to live at the "residence premises" in order for coverage to be effective, no coverage existed for the policyholder's claim. See, Epps v. Nicholson, 187 Ga. App. 246, 247 (1) (370 S.E.2d 13) (1988) (construing similar policy condition as resulting in no coverage because named insured did not live at the residence premises.) Id.

Here, "the policy is... clear that if [Mr. Gordon] did not reside at the insured property at the time of the loss, the property is not a residence premises as defined by the policy and the policy does not cover the loss". Heniser v. Frankenmuth Mutual Insurance, 449 Mich. 155; 534 N.W.2d 502, 506 (1995)

The Heniser court, consistent with previously mentioned precedent, stated, "coverage in this case is predicated on two separate requirements: (1) the insured must reside at the insured premises, and (2) the premises must be listed in the declaration section. We find that this policy admits of but one interpretation and is not ambiguous or fatally unclear. Id. at 510. See, also, Shepard v. Keystone Insurance Company, 743 F.Supp. 429 (Mar. 1990), (held "no ambiguity as to the meaning of the terms "reside" or "residence" as used in the policy". The policyholder was required to live on the premises and when he failed to do so, there was no coverage.) Id. at 434.

## III. CONCLUSION

WHEREFORE, for all of the above reasons, this Honorable Court should grant The Standard Fire Insurance Company's Motion for Summary Judgment.

Respectfully submitted,

Plaintiff, The Standard Fire Insurance Co.,
By its attorneys,

Ronald Langlois, # 2891
Smith & Brink, P.C.
One State Street, Suite 400
Providence, RI 02908
Tel: (401) 351-9970

## CERTIFICATION

I hereby certify that I mailed a true copy of the within to **Robert Flaherty, Esquire, Gregory Sorbello, Esquire**, Flaherty & Lawrence, 70 Jefferson Boulevard, Warwick, RI 02888 and **Dennis J. Tente, Esquire**, Coletti & Tente, 311 Doric Avenue, Cranston, RI 02910 on the 9 day of August, 2005.

Dana Palangi

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

THE STANDARD FIRE
INSURANCE COMPANY

V. C.A.NO.: 04-351S

DONALD GORDON AND
NICOLE LEA GORDON

**AFFIDAVIT**

I, Ronald Langlois, being first duly sworn, deposes and states as follows:

1. I am an attorney practicing with the law firm of Smith & Brink, P.C., representing the Plaintiff, The Standard Fire Insurance Company in the above-captioned matter.

2. I hereby stated that attached hereto as Exhibit "A" is a true and accurate copy of the pertinent parts of the Homeowners policy for the premises which is the subject matter of the above-entitled action.

RONALD LANGLOIS #2891

Dated: 8/9/05

Travelers

# *Homeowners Policy Booklet*

## *from Travelers*

EXHIBIT
A

HO-3 HOMEOWNERS 3 - SPECIAL FORM

# Homeowners 3 Special Form

## AGREEMENT

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

## DEFINITIONS

Throughout this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse, if a resident of the same household, and "we", "us" and "our" refer to the Company providing this insurance. In addition, certain words and phrases are defined as follows:

1. **"aircraft"** means any contrivance, whether or not tethered, used or designed for air or space flight capable of carrying cargo or people. The contrivance may be either lighter or heavier than the air, engine powered or designed or used to float, glide, soar or control descent.
2. **"bodily injury"** means bodily harm, sickness or disease, including required care, loss of services and death that results.
3. **"business"** includes trade, profession or occupation
4. **"insured"** means you and the following residents of your household:
   a. your relatives;
   b. any other person under the age of 21 who is in the care of any person named above.

   Under Section II, **"insured"** also means:

   c. with respect to animals or watercraft to which this policy applies, any person or organization legally responsible for these animals or watercraft which are owned by you or any person included in **4.a.** or **4.b.** above. A person or organization using or having custody of these animals or watercraft in the course of any **business**, or without permission of the owner is not an **insured**;
   d. with respect to any vehicle to which this policy applies:
      (1) persons while engaged in your employ or that of any person included in **4.a.** or **4.b.** above; or
      (2) other persons using the vehicle on an **insured**
5. **"insured location"** means:
   a. the residence premises;
   b. the part of any other premises, other structures, and grounds, used by you as a residence and which is shown in the Declarations or which is acquired by you during the policy period for your use as a residence;
   c. any premises used by you in connection with the premises included in **5.a.** or **5.b.**;
   d. any part of a premises not owned by any **insured** but where any **insured** is temporarily residing;
   e. vacant land owned by or rented to any **insured** other than farm land;
   f. land owned by or rented to any **insured** on which a one or two family dwelling is being constructed as a residence for any **insured**;
   g. individual or family cemetery plots or burial vaults of any **insured**;
   h. any part of a premises occasionally rented to any **insured** for other than **business purposes**.
   i. any part of a premises, which is not a residence, owned or rented by any **insured** used for other than business purposes to:
      (1) moor or store watercraft;
      (2) garage or store motorized land vehicles; or
      (3) park or store **aircraft**.
6. **"occurrence"** means an accident, including continuous or repeated exposure to substantially the same generally harmful conditions which results, during the policy period, in:
   a. **bodily injury**; or
   b. **property damage**.
7. **"property damage"** means physical injury to, destruction of, or loss of use of tangible property.
8. **"residence employee"** means an employee of any **insured** who performs duties in connection with the maintenance or use of the **residence premises**, including household or domestic services, or who performs duties elsewhere of a simi-

lar nature not in connection with the **business** of any **insured**.

9. **"residence premises"** means the one or two family dwelling, other structures, and grounds or that part of any other building where you reside and which is shown as the **"residence premises"** in the Declarations.

## SECTION I - PROPERTY COVERAGES

**COVERAGE A - DWELLING**

**We cover:**

a. the dwelling on the **residence premises** shown in the Declarations used principally as a private residence, including structures attached to the dwelling on the same or contiguous foundation; and

b. materials and supplies located on or adjacent to the **residence premises** for use in the construction, alteration or repair of the dwelling or other structures on the **residence premises**.

THIS COVERAGE DOES NOT APPLY TO:

a. FENCES;

b. EXTERIOR WALLS THAT DO NOT SUPPORT THE ROOF OF THE DWELLING;

c. LAND, INCLUDING LAND ON WHICH THE DWELLING IS LOCATED.

**COVERAGE B - OTHER STRUCTURES**

**We cover:**

Other structures on the **residence premises**, separated from the dwelling by clear space. Structures with a separation from the dwelling and its foundation and linked by only a conduit, deck, fence, patio, utility line, walk, wall, or similar connector means that structure is an other structure. Other structures include but are not limited to:

a. Barns;

b. Exterior walls that do not support the roof of the dwelling;

c. Fences;

d. Garages that are detached from the dwelling;

e. Gazebos;

f. Sheds; or

g. Swimming pools that are exterior to the walls supporting the roof of the dwelling.

THIS COVERAGE DOES NOT APPLY TO LAND, INCLUDING LAND ON WHICH THE OTHER STRUCTURES ARE LOCATED.

WE DO NOT COVER OTHER STRUCTURES:

a. USED IN WHOLE OR IN PART FOR **BUSINESS** PURPOSES: OR

b. RENTED OR HELD FOR RENTAL TO ANY PERSON NOT A TENANT OF THE DWELLING, UNLESS USED SOLELY AS A PRIVATE GARAGE. Use of Coverage B does not reduce the amount of coverage available to you under Coverage A - Dwelling.

**COVERAGE C - PERSONAL PROPERTY**

We cover personal property owned or used by any **insured** while it is anywhere in the world. At your request, we will cover personal property owned by others while the property is on the part of the **residence premises** occupied by any **insured**. In addition, we will cover at your request, personal property owned by a guest or a **residence employee**, while the property is in any residence occupied by any **insured**.

Our limit of liability for personal property usually located at any **insured's** residence, other than the **residence premises**, is 10% of the limit of liability for Coverage C, or $1,000, whichever is greater. THIS LIMIT APPLIES TO THE PERSONAL PROPERTY OF INSUREDS, INCLUDING, BUT NOT LIMITED TO, STUDENTS WHO RESIDE AWAY FROM THE **RESIDENCE PREMISES** PERIODICALLY FOR THE PERSONAL PROPERTY AT THE LOCATION AWAY. Personal property in a newly acquired principal residence is not subject to this limitation for the 30 days immediately after you begin to move the property there.

**SPECIAL LIMITS OF LIABILITY.** THESE LIMITS DO NOT INCREASE THE COVERAGE C LIMIT OF LIABILITY. THE SPECIAL LIMIT FOR EACH FOLLOWING NUMBERED CATEGORY IS THE TOTAL LIMIT FOR EACH OCCURRENCE FOR ALL PROPERTY IN THAT NUMBERED CATEGORY.

1. $200 ON MONEY, BANK NOTES, BULLION, GOLD OTHER THAN GOLDWARE, SILVER OTHER THAN SILVERWARE, PLATINUM, COINS AND MEDALS.

2. $1,000 ON SECURITIES, ACCOUNTS, DEEDS, EVIDENCES OF DEBT, LETTERS OF CREDIT, NOTES OTHER THAN BANK NOTES, MANUSCRIPTS, PASSPORTS, TICKETS AND STAMPS.

3. $1,000 ON WATERCRAFT, INCLUDING THEIR TRAILERS, FURNISHINGS, EQUIPMENT AND OUTBOARD MOTORS.

b. at our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we shall receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

Subrogation shall not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

13. **No Benefit to Bailee.** We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this policy.

14. **Nuclear Hazard Clause.**

a. "Nuclear Hazard" means any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

b. LOSS CAUSED BY THE NUCLEAR HAZARD SHALL NOT BE CONSIDERED LOSS CAUSED BY FIRE, EXPLOSION, OR SMOKE, WHETHER THESE PERILS ARE SPECIFICALLY NAMED IN OR OTHERWISE, INCLUDED WITHIN THE PERILS INSURED AGAINST IN SECTION I.

c. THIS POLICY DOES NOT APPLY UNDER SECTION I TO LOSS CAUSED DIRECTLY OR INDIRECTLY BY NUCLEAR HAZARD, EXCEPT THAT DIRECT LOSS BY FIRE RESULTING FROM THE NUCLEAR HAZARD IS COVERED.

15. **Inflation Protection Coverage**

a. During the term of this policy, we will increase the limit of liability for Coverage A monthly at the rate of 1/12 of the annual residential building cost percentage change factors as determined by our cost calculation method which is based on a nationally recognized construction cost index.

b. The limit of liability shown on the Declarations Page for Coverage A will be revised yearly at each renewal to reflect any changes in building costs during the policy period as determined in paragraph 1 above. Any adjustment in premium resulting from this change will be made on the basis of rates in use by us at the time the change is made. You have the right to refuse this change prior to the renewal date by contacting your agent or us.

16. **Recovered Property.** If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property will be returned to or retained by you or it will become our property. If the recovered property is returned to or retained by you, the loss payment will be adjusted based on the amount you received for the recovered property.

## SECTION II - LIABILITY COVERAGES

### COVERAGE E - PERSONAL LIABILITY

If a claim is made or a suit is brought against any **insured** for damages because of **bodily injury** or **property damage** caused by an **occurrence** to which this coverage applies, even if the claim or suit is false, we will:

a. Pay up to our limit of liability for the damages for which the **insured** is legally liable. Damages include prejudgment interest awarded against the **insured**; and

b. provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the occurrence equals our limit of liability.

### COVERAGE F-MEDICAL PAYMENTS TO OTHERS

We will pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of an accident causing **bodily injury**. Medical expenses means reasonable charges for medical, surgical, X-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage does not apply to you or regular residents of your household except **residence employees**. As to others, this coverage applies only:

a. to a person on the **insured location** with the permission of any **insured**; or

b. to a person off the **insured location**, if the **bodily injury**:

(1) arises out of a condition on the **insured location** or the ways immediately adjoining;

(2) is caused by the activities of any **insured**;

**(3)** is caused by a **residence employee** in the course of the **residence employee's** employment by any **insured**; or

**(4)** is caused by an animal owned by or in the care of any **insured**.

## SECTION II - EXCLUSIONS

1. **Coverage E - Personal Liability and Coverage F - Medical Payments to Others** do not apply to

b. Arising out of or in connection with a **business** engaged in by any **insured**. This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstances involving a service or duty rendered, promised, owed or implied to be provided because of the nature of the **business**;

**NOTE**: The furnishing of home day care services for

(1) a fee, or

(2) other compensation

by the insured and the rendering of such services two or more days per week for a period of two or more hours per day constitutes one type of many different business pursuits.

c. Arising out of the rental or holding for rental of any premises by any **insured**. This exclusion does not apply to the rental or holding for rental of an **insured location**:

(1) on an occasional basis if used only as a residence.

(2) in part for use only as a residence, unless a single family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

(3) in part, as an office, school, studio or private garage;

d. arising out of the rendering or failing to render professional services;

e. arising out of a premise:

(1) owned by any **insured**;

(2) rented to any **insured**; or

(3) rented to others by any **insured**;

that is not an **insured location**;

f. arising out of:

(1) the ownership, maintenance, use, loading or unloading of motor vehicles or all other motorized land conveyances, including trailers, owned or operated by or rented or loaned to any **insured**;

(2) the entrustment by any **insured** of a motor vehicle or any other motorized

paragraph (1) or (2) above.

This exclusion does not apply to:

(1) a trailer not towed by or carried on a motorized land conveyance.

(2) a motorized land conveyance designed for recreational use off public roads, not subject to motor vehicle registration and:

(a) not owned by any **insured**; or

(b) owned by any **insured** and on an **insured** location.

(3) a motorized golf cart when used to play golf on a golf course.

(4) a vehicle or conveyance not subject to motor vehicle registration which is:

(a) used to service any **insured's** residence;

(b) designed for assisting the handicapped; or

(c) in dead storage on an **insured location**.

g. arising out of:

(1) the ownership, maintenance, use, loading or unloading of watercraft described below;

(2) the entrustment by any **insured** of a watercraft described below to any person; or

(3) vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using an excluded watercraft described below.

Excluded watercraft are those that are principally designed to be propelled by engine power, jet power or electric motor, or are sailing vessels, whether owned by or rented to any insured. This exclusion does not apply to watercraft:

(1) that are not sailing vessels and are powered by: